IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| DEAH BABEJI, | ) **ELECTRONICALLY FILED** |
| *Plaintiff*, | ) Case No. 2:24cv2 |
| vs. | ) |
| THE COMMONWEALTH OF PENNSYLVANIA DEPARTMENT OF CORRECTIONS, | ) |
| | ) **JURY TRIAL DEMANDED** |
| *Defendant*. | ) |

## COMPLAINT IN CIVIL ACTION

Plaintiff, Deah Babeji, by and through the undersigned counsel, now files this Complaint in Civil Action against Defendant, The Commonwealth of Pennsylvania Department of Corrections, averring as follows:

## PARTIES

1. Plaintiff, Deah Babeji, ("<u>Plaintiff</u>") is an adult individual who currently resides at 162 Old Hickory Ridge Road, Washington, Pennsylvania, 15301.

2. Defendant, the Commonwealth of Pennsylvania Department of Corrections, ("<u>Defendant</u>"). Defendant was and is a Pennsylvania state agency organized and existing under the laws of the Commonwealth of Pennsylvania. Defendant maintains a facility at 169 Progress Drive, Waynesburg, Pennsylvania, 15370, which is where Plaintiff would report to work (the "<u>Facility</u>").

## JURISDICTION AND VENUE

**A.   This Court Possesses Subject Matter Jurisdiction Pursuant to 28 U.S.C. § 1331 and Supplemental Jurisdiction Pursuant to 28 U.S.C. § 1367.**

3.   This Court has subject matter jurisdiction over this matter pursuant to 28 U.S.C. § 1331 ("Federal Question Jurisdiction"), as Plaintiff is advancing claims under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, *et seq.* (hereinafter, "Title VII"), (Plaintiff's claims arising under Title VII are identified as the "Federal Law Claim").

4.   Plaintiff is also advancing claims under the Pennsylvania Human Relations Act (the "PHRA"), 43 P.S. § 951, *et seq.* ("State Law Claim").

5.   This Court may exercise supplemental jurisdiction over the State Law Claim pursuant to 28 U.S.C. § 1367(a) as the Federal Law Claim and the State Law Claim share operative facts that support the corresponding causes of action within the Federal Law Claim and the State Law Claim.

6.   Further, the operative facts between the Federal Law Claims and the State Law Claims mirror one another to such a degree that they form the "same case or controversy" under Article III § 2 of the United State Constitution which further supports this Court's exercise of supplemental jurisdiction over the State Law Claims.

**B.   The United States District Court for the Western District of Pennsylvania is the Appropriate Venue for this Matter Pursuant to 28 U.S.C. § 1391(b).**

7.   Venue is proper in the United States District Court for the Western District of Pennsylvania, Pittsburgh Division (the "Western District") as a substantial part of the events and omissions giving rise to the Federal Law Claims and State Law Claims occurred within this judicial district. Therefore, venue is proper pursuant to 28 U.S.C. § 1391(b).

8. Specifically, these events and omissions occurred in Greene County, Pennsylvania which is one of the counties encompassed by the Western District.

9. This matter is properly before the Pittsburgh Division of the Western District given the conduct complained of herein arose in Allegheny County, Pennsylvania, and conduct arising within Allegheny County is docketed within the Pittsburgh Division of the Western District pursuant to Local Rule 3 (LCvR 3).

**C.  This Court May Exercise Jurisdiction Over Plaintiff's Claims in Compliance With the Eleventh Amendment.**

10. The Eleventh Amendment of the United States Constitution generally provides states with immunity from suit perpetuated by private parties in federal court. Ackah v. Pa. Dep't of Corr., 2008 U.S. Dist. LEXIS 129718, *8 (2008) (citing *MCI Telecomm. Corp. v. Bell Atl. Pa.*, 271 F.3d 491, 502 (3d Cir.2001)).

11. However, the immunity extended by the Eleventh Amendment is subject to three exceptions and specifically where "congressional abrogation" exists. *Id* citing *Pa. Fed'n of Sportsmen's Clubs, Inc. v. Hess*, 297 F.3d 310, 323 (3d Cir.2002).

12. The Supreme Court of the United States has recognized that the congressional enactment of Title VII abrogated the Eleventh Amendment and enables a private citizen to pursue the state under Title VII in the federal district courts. *Fitzpatrick v. Bitzer*, 427 U.S. 445, 456, 96 S. Ct. 2666, 49 L. Ed. 2d 614 (1976).

13. Accordingly, Plaintiff may properly pursue Defendant in this Court.

**FACTUAL BACKGROUND**

14. On or about March 18, 2020, Plaintiff commenced her employment with Defendant. Initially, Plaintiff was assigned to work at the State Correctional Institution Fayette, ("SCI-Fayette") in the position of "Corrections Utility Plant Operator" (the "CUPO Position"). In this role, Plaintiff was responsible for operations and maintenance of all utilities located on the exterior of SCI- Fayette.

15. Plaintiff was compensated by Defendant at a rate of $24.33 per hour worked. At all times relevant hereto, Plaintiff worked a set schedule of 2:00 p.m. to 10:00 p.m. (the "Late Afternoon Shift")

16. Relevant to the instant action, Plaintiff's educational and professional experience include, but are not limited to, (i) 3 years working as a Maintenance Class B position at a journeyperson level at Canonsburg Hospital wherein she primarily received work orders for plumbing failures; (ii) numerous years of experience in maintaining, repairing, and replacing plumbing equipment and systems; (iii) certification as a Fourth Class Power Engineer from the National Institute of the Uniform Licensing of Power Engineers; (iv) certification in Heating and Air Conditioning Technology; (v) an associate degree in liberal arts and sciences; and (vi) an associate degree in paralegal studies.

17. On or around February 2021, Plaintiff applied for, and received a new position within Defendant. This new position required Plaintiff to transfer from SCI-Fayette to State Correctional Facility Green ("SCI-Greene").

18. In or around February 2022, Plaintiff began applying for relevant positions within her department whose dictated work hours were Monday through Friday; from 7:00 a.m. to 3:00 p.m. and allowed for weekend and holidays off (the "Day Shift").

4

19. Specifically, in or around February 2022, Plaintiff applied for the position of, "Corrections Maintenance Foreman" (the "First CMF Position") a Day Shift position.

20. Despite Plaintiff's qualifications for said position, Defendant declined to even offer Plaintiff an interview for said position. Instead, Defendant chose to hire Joe Rechichar ("Rechichar"), a biological male in his thirties, who possessed no experience in performing maintenance duties. By way of contrast, Plaintiff was markedly more qualified than Rechichar to assume the role of Corrections Maintenance Foreman.

21. Despite being unlawfully declined the opportunity to advance herself in her department, Plaintiff again attempted to apply for an open position within her department.

22. In or around March 2023, Plaintiff applied for another Day Shift position, this time, as "Corrections Plumbing Trades Instructor" (the "CPTI Position").

23. The new position Plaintiff was applying for, not only had more optimal hours, but also came with an increased wage of an additional $3.00 to $4.00 per hour, and the opportunity for unlimited overtime hours.

24. Plaintiff was interviewed for the aforementioned position, and despite being adequately qualified for the position, Plaintiff was not selected for the position, and a biological male was chosen instead.

25. On or about May 2022, a manager within Plaintiff's department, Dennis Kapolka ("Kapolka"), advised Plaintiff to apply for a recently opened position, "Interim Utility Plant Supervisor" (the "IUPS Position") Kapolka advised Plaintiff that she would "get the job" and emphasized Plaintiff's high level of qualification and work ethic as reasons she would be awarded the position.

26. However, despite Kapolka's reassurances, the department hired a biological male to fulfill the position, namely one that did not have any supervisory experience. In comparison, Plaintiff possessed much greater experience and was significantly more qualified to assume the job duties of an "Interim Utility Plant Supervisor."

27. Upon information and belief, said male was awarded the position of "Interim Utility Plant Supervisor" absent any form of interview processes.

28. Additionally, in or about July 2022, Plaintiff applied for yet another position within her department. Plaintiff applied for the position of "Plumber" (the "Plumber Position") which had a Day Shift schedule. This position not only included a more favorable work schedule for Plaintiff, but also came with an increased rate of pay.

29. Ultimately, however, Defendant hired a biological male, particularly one that did not have any journeyperson level experience or a trades' degree, while Plaintiff had accumulated close to three years of experience doing plumbing work in addition to possessing said professional and educational accomplishments.

30. Once again, Plaintiff applied for a Day Shift position within her department. Plaintiff applied for the position of "Corrections Maintenance Foreman" (the "Second CMF Position"). Despite Plaintiff being adequately qualified for said position, the position was instead offered to a younger biological male who, upon information and belief, did not possess any relevant work experience.

31. Subsequent to hiring the aforementioned candidate, Defendant learned that he did not pass a background check, and still refused to hire Plaintiff, and instead, hired another biological male, reinforcing the animus Defendant had towards Plaintiff due to her gender.

6

32. Based on the facts delineated above, Defendant perpetuated a clear animus against Plaintiff on the basis of her gender and discriminated against her by refusing to promote and hire Plaintiff for positions she was adequately qualified for.

### COUNT I
### DISCRIMINATION ON THE BASIS OF GENDER REGARDING THE FIRST AND SECOND CORRECTIONS MAINTENANCE FOREMAN POSITIONS IN VIOLATION OF TITLE VII AND THE PHRA
### 42 U.S.C. § 2000e, *et seq.* and 43 P.S. § 951, *et seq.*

33. Plaintiff incorporates the allegations contained in the paragraphs above, as if fully set forth at length herein.

34. A *prima facie* case of gender-based employment discrimination requires a plaintiff to show: (1) membership in a protected class; (2) qualification for the position; (3) an adverse employment action taken against them despite being qualified; and (4) the action occurred under circumstances that could give rise to an inference of intentional discrimination. *Makky v. Chertoff*, 541 F.3d 205, 214 (3d Cir. 2008).

**A.     Plaintiff is a Member of a Protected Class on the Basis of Her Gender.**

35. As a biological female, Plaintiff is afforded protected status pursuant to Title VII and the PHRA.

**B.     Plaintiff was Qualified for the First Corrections Maintenance Foreman Position.**

36. Plaintiff was qualified for the First Corrections Maintenance Foreman Position and capable, at all times, of satisfactorily performing the duties and functions of the role. Further, Plaintiff was qualified for the Second Corrections Maintenance Foreman Position (collectively, the First Corrections Maintenance Foreman Position and the Second Corrections Maintenance Foreman Positions are referred to as the "CMFP Positions").

37. Plaintiff possessed and exercised the skill, experience, and ability needed to perform the functions of the CMFP Positions. Specifically, Plaintiff was sufficiently skilled in the areas of: 3 years working as a Maintenance Class B position at a journeyperson level at Canonsburg Hospital wherein she primarily received work orders for plumbing failures; (ii) numerous years of experience in maintaining, repairing, and replacing plumbing equipment and systems; (iii) certification as a Fourth Class Power Engineer from the National Institute of the Uniform Licensing of Power Engineers; (iv) certification in Heating and Air Conditioning Technology.

38. Additionally, and in demonstration of Plaintiff's qualifications and capabilities, Plaintiff performed her assignments without a single issue or complaint levied against her. Defendants therefore ratified Plaintiff's competency and qualifications.

**C.    Plaintiff Suffered Adverse Employment Actions in that She was Denied the CMFP Positions.**

39. The CMFP Positions offered Plaintiff a variety of benefits over her initial position. Specifically, these benefits were both economically tangible, beneficial to Plaintiff's career, and higher within the organizational hierarchy offered by Defendant.

40. The CMFP Positions offered increased wages and more desirable working hours.

41. The CMFP Positions elevated Plaintiff in terms of her career trajectory.

42. The CMFP Positions were more desirable positions within Defendant's organization, offered more authority, and were more socially desirable.

43. As a result of the denial, Plaintiff to be forced to work in a position that offered a lower wage, less responsibility, and work a less favorable schedule, along with experiencing pecuniary losses and suffering from emotional distress.

**D.     Plaintiff's Denial of the CMFP Positions Occurred Under Discriminatory Circumstances.**

44.     Following Plaintiff's denial of the CMFP Positions, Defendant hired less qualified biological males.

45.     In light of the excessive qualifications that Plaintiff possessed for the roles, particularly in light of the disparity in qualifications between Plaintiff and the male individuals who were hired, it is necessarily inferable that Defendant discriminated against Plaintiff because she was a biological female.

46.     At all times relevant hereto, Defendant acted with the knowledge that it was lawfully required to provide a workplace free of discrimination to individuals like Plaintiff who were statutorily protected by Title VII.

47.     In discriminating against Plaintiff, Defendant acted both with malice and reckless indifference to Plaintiff's federally protected rights and Defendant's actions warrant Plaintiff's recovery of punitive damages.

48.     As a direct and proximate result of Defendant's discriminatory conduct in violation of Title VII and the PHRA, Plaintiff has suffered not only tangible economic loss in the form of lost front pay and benefits, but also substantial emotional distress, embarrassment and humiliation, pain and suffering, and is entitled to compensatory damages for these injuries, in addition to the tangible economic losses she suffered and will continue to suffer.

WHEREFORE, Plaintiff, Deah Babeji, seeks the damages set forth in the *ad damnum* clause of this Complaint, *infra*.

## COUNT II
### DISCRIMINATION ON THE BASIS OF GENDER REGARDING THE CORRECTIONS PLUMBING TRADES INSTRUCTOR POSITION IN VIOLATION OF TITLE VII AND THE PHRA
### 42 U.S.C. § 2000e, *et seq*. and 43 P.S. § 951, *et seq*.

49. Plaintiff incorporates the allegations contained in the paragraphs above, as if fully set forth at length herein.

50. A prima facie case of gender-based employment discrimination requires a plaintiff to show: (1) membership in a protected class; (2) qualification for the position; (3) an adverse employment action taken against them despite being qualified; and (4) the action occurred under circumstances that could give rise to an inference of intentional discrimination. *Makky v. Chertoff*, 541 F.3d 205, 214 (3d Cir. 2008).

**A.  Plaintiff is a Member of a Protected Class on the Basis of Her Gender.**

51. As a biological female, Plaintiff is afforded protected status pursuant to Title VII and the PHRA.

**B.  Plaintiff was Qualified for the CPTI Position.**

52. Plaintiff was qualified for the CPTI Position and capable at all times, of satisfactorily performing the duties and function of the role.

53. Plaintiff possessed and exercised the skill, experience, and ability to meet the expectations of this position. Specifically, Plaintiff was sufficiently skilled in the field of plumbing by having 3 years working experience as a Maintenance Class B position at a journeyperson level at Canonsburg Hospital wherein she primarily received work orders for plumbing failures; (ii) numerous years of experience in maintaining, repairing, and replacing plumbing equipment and systems.

54. Furthermore, Plaintiff performed her job duties and assignments without a single issue or complaint levied against her.

**C.  Plaintiff Suffered an Adverse Employment Action in that She was Denied the CPTI Position.**

55. Plaintiff suffered an adverse employment action in that she was denied the promotional position and benefits associated with the CPTI Instructor Position.

56. The CPTI Position not only offered Plaintiff more preferable hours of work, but also came with an increased wage of an additional $3.00 to $4.00 per hour, and the opportunity for unlimited overtime hours.

57. By denying Plaintiff this job opportunity solely based on her gender, she not only suffered from potential pecuniary losses but severe emotional distress.

**D.  Plaintiff Suffered an Adverse Employment Action Due to a Discriminatory Animus.**

58. Following Plaintiff's denial of the CPTI Position, Defendant hired a less qualified biological male for the Position.

59. In light of the excessive qualifications that Plaintiff possessed for the role, particularly in light of the disparity in qualifications between Plaintiff and the male individual who was hired, it is necessarily inferable that Defendant discriminated against Plaintiff because she was a biological female.

60. At all times relevant hereto, Defendant acted with the knowledge that it was lawfully required to provide a workplace free of discrimination to individuals like Plaintiff who were statutorily protected by Title VII.

61. In discriminating against Plaintiff, Defendant acted both with malice and reckless indifference to Plaintiff's federally protected rights and Defendant's actions warrant Plaintiff's recovery of punitive damages.

62. As a direct and proximate result of Defendant's discriminatory conduct in violation of Title VII and the PHRA, Plaintiff has suffered not only tangible economic loss in the form of lost front pay and benefits, but also substantial emotional distress, embarrassment and humiliation, pain and suffering, and is entitled to compensatory damages for these injuries, in addition to the tangible economic losses she suffered and will continue to suffer.

WHEREFORE, Plaintiff, Deah Babeji, seeks the damages set forth in the *ad damnum* clause of this Complaint, *infra*.

## COUNT III
### DISCRIMINATION ON THE BASIS OF GENDER REGARDING THE INTERIM UTILITY PLANT SUPERVISOR POSITION IN VIOLATION OF TITLE VII AND THE PHRA
### 42 U.S.C. § 2000e, et seq. and 43 P.S. § 951, et seq.

63. Plaintiff incorporates the allegations contained in the paragraphs above, as if fully set forth at length herein.

64. A prima facie case of gender-based employment discrimination requires a plaintiff to show: (1) membership in a protected class; (2) qualification for the position; (3) an adverse employment action taken against them despite being qualified; and (4) the action occurred under circumstances that could give rise to an inference of intentional discrimination. *Makky v. Chertoff*, 541 F.3d 205, 214 (3d Cir. 2008).

**A.     Plaintiff is a Member of a Protected Class on the Basis of her Gender.**

65.    As a biological female, Plaintiff is afforded protected status pursuant to Title VII and the PHRA.

**B.     Plaintiff was Qualified for the IUPS Position.**

66.    Plaintiff was qualified for the IUPS Position and at all times relevant hereto was capable of satisfactorily performing the duties and functions of the role.

67.    Plaintiff possessed and exercised the skill, experience, and ability needed to perform the functions of the IUPS Position.  Specifically, Plaintiff is qualified through being sufficiently skilled in the areas of: 3 years working as a Maintenance Class B position at a journeyperson level at Canonsburg Hospital wherein she primarily received work orders for plumbing failures; (ii) numerous years of experience in maintaining, repairing, and replacing plumbing equipment and systems; (iii) certification as a Fourth Class Power Engineer from the National Institute of the Uniform Licensing of Power Engineers; (iv) certification in Heating and Air Conditioning Technology.

68.    Furthermore, during her employment, Plaintiff performed her assignments without a single issue or complaint levied against her.

**C.     Plaintiff Suffered an Adverse Employment Action in that She was Denied the IUPS Position and was Denied the IUPS Under Discriminatory Grounds.**

69.    Plaintiff suffered an adverse employment action in that she was denied the promotional position and benefits associated with the IUPS Position.

70.    Following Plaintiff's denial of the IUPS Position, Defendant hired a less qualified biological male for the Position.

13

71. In light of the excessive qualifications that Plaintiff possessed for the role, particularly in light of the disparity in qualifications between Plaintiff and the male individual who was hired, it is necessarily inferable that Defendant discriminated against Plaintiff because she was a biological female.

72. At all times relevant hereto, Defendant acted with the knowledge that it was lawfully required to provide a workplace free of discrimination to individuals like Plaintiff who were statutorily protected by Title VII.

73. In discriminating against Plaintiff, Defendant acted both with malice and reckless indifference to Plaintiff's federally protected rights and Defendant's actions warrant Plaintiff's recovery of punitive damages.

74. As a direct and proximate result of Defendant's discriminatory conduct in violation of Title VII and the PHRA, Plaintiff has suffered not only tangible economic loss in the form of lost front pay and benefits, but also substantial emotional distress, embarrassment and humiliation, pain and suffering, and is entitled to compensatory damages for these injuries, in addition to the tangible economic losses she suffered and will continue to suffer.

WHEREFORE, Plaintiff, Deah Babeji, seeks the damages set forth in the *ad damnum* clause of this Complaint, *infra*.

## COUNT IV
**DISCRIMINATION ON THE BASIS OF GENDER REGARDING THE PLUMBER POSITION IN VIOLATION OF TITLE VII AND THE PHRA**
**42 U.S.C. § 2000e, et seq. and 43 P.S. § 951, et seq.**

75. Plaintiff incorporates the allegations contained in the paragraphs above, as if fully set forth at length herein.

76. A prima facie case of gender-based employment discrimination requires a plaintiff to show: (1) membership in a protected class; (2) qualification for the position; (3) an adverse employment action taken against them despite being qualified; and (4) the action occurred under circumstances that could give rise to an inference of intentional discrimination. Makky v. Chertoff, 541 F.3d 205, 214 (3d Cir. 2008).

**A.**     **Plaintiff is a Member of a Protected Class on the Basis of Her Gender.**

77. As a biological female, Plaintiff is afforded protected status pursuant to Title VII and the PHRA.

**B.**     **Plaintiff was Qualified for the Plumber Position.**

78. Plaintiff was qualified for the position and capable, at all times, of satisfactorily performing the duties and functions of the role.

79. Plaintiff possessed and exercised the skill, experience, and ability needed to perform the functions of her position, and the positions she applied for. Specifically, Plaintiff was sufficiently skilled in the areas of: (i) 3 years working as a Maintenance Class B position at a journeyperson level at Canonsburg Hospital wherein she primarily received work orders for plumbing failures; (ii) numerous years of experience in maintaining, repairing, and replacing plumbing equipment and systems.

80. Furthermore, during her employment, Plaintiff performed her assignments without a single issue or complaint levied against her.

**C.**     **Plaintiff Suffered an Adverse Employment Action in that She was Denied the IUPS Position and was Denied the IUPS Under Discriminatory Grounds.**

81. Plaintiff suffered an adverse employment action in that she was denied the Plumber Position.

82. The denial of the Plumber Position denied Plaintiff the opportunity to earn a higher wage and the opportunity to work a more favorable schedule.

83. Instead of Plaintiff, Defendant hired a biological male, particularly one that did not have any journeyperson level experience or a trades' degree, while Plaintiff had accumulated close to three years of experience doing plumbing work in addition to possessing said professional and educational accomplishments.

84. Given the underlying gender hostility in the consistent denials of employment Defendant effectuated towards Plaintiff as described in this Complaint, it is necessarily inferable that Defendant discriminated against Plaintiff because she was a biological female.

85. At all times relevant hereto, Defendant acted with the knowledge that it was lawfully required to provide a workplace free of discrimination to individuals like Plaintiff who were statutorily protected by Title VII.

86. In discriminating against Plaintiff, Defendant acted both with malice and reckless indifference to Plaintiff's federally protected rights and Defendant's actions warrant Plaintiff's recovery of punitive damages.

87. As a direct and proximate result of Defendant's discriminatory conduct in violation of Title VII and the PHRA, Plaintiff has suffered not only tangible economic loss in the form of lost front pay and benefits, but also substantial emotional distress, embarrassment and humiliation, pain and suffering, and is entitled to compensatory damages for these injuries, in addition to the tangible economic losses she suffered and will continue to suffer.

WHEREFORE, Plaintiff, Deah Babeji, seeks the damages set forth in the *ad damnum* clause of this Complaint, *infra*.

**REQUEST FOR RELIEF**

For the above-stated reasons, Plaintiff, Deah Babeji, respectfully requests this Honorable Court to enter judgment in her favor, and against Defendant, the Commonwealth of Pennsylvania Department of Corrections, and prays for relief as follows:

1. Declare and find that Defendant committed one or more of the following acts:

    i. Violated provision of Title VII in discriminating against Plaintiff based on her gender in denying her the First Corrections Maintenance Foreman Position;

    ii. Violated provision of Title VII in discriminating against Plaintiff based on her gender in denying her the First Corrections Plumbing Trade Instructor Position;

    iii. Violated provision of Title VII in discriminating against Plaintiff based on her gender in denying her the Interim Utility Plant Supervisor Position;

    iv. Violated provision of Title VII in discriminating against Plaintiff based on her gender in denying her the Plumber Position;

    v. Violated provision of Title VII in discriminating against Plaintiff based on her gender in denying her the Second Corrections Maintenance Foreman Position;

2. Award compensatory damages, including but not limited to past and future pecuniary and non-pecuniary losses and suffering, mental anguish, inconvenience, and loss of enjoyment of life.

3. Award pre-judgment and post-judgment interest where accorded by law;

    4.    Award reasonable attorney's fees and costs of suit incurred prosecuting these claims;

    5.    Award injunctive and other equitable relief as provided by law;

    6.    Award punitive damages sufficient to deter Defendant from committing additional violations of Title VII;

    7.    Award such other and further relief as this Court deems just, equitable, and proper.

Respectfully submitted,

**THE WORKERS' RIGHTS LAW GROUP, LLP**

Date: January 2, 2024    By: */s/ Kyle H. Steenland*
Kyle H. Steenland (Pa. I.D. No. 327786)

The Workers' Rights Law Group, LLP
Foster Plaza 10
680 Andersen Drive, Suite 230
Pittsburgh, PA 15220
Telephone: 412.910.9592
Facsimile: 412.910.7510
kyle@workersrightslawgroup.com

*Counsel for Plaintiff, Deah Babeji*

## **VERIFICATION**

I, Deah Babeji, have read the foregoing Complaint in Civil Action and verify that the statements therein are correct to the best of my personal knowledge, information and/or belief. I understand that this verification is made subject to the penalties of 18 Pa. C.S.A. 4904 relating to unsworn falsification to authorities, which provides that if I knowingly make false averments, I may be subject to criminal penalties.

Dated: 01 / 02 / 2024

*Deah Babeji*

Plaintiff, Deah Babeji